UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PATRICIA DONNELLY, | No. CV 06-4702-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 2, 2006, seeking review of the Commissioner's denial of her applications for Supplemental Security Income payments and Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 28, 2006, and October 2, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 10, 2007, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

## II.

## BACKGROUND

Plaintiff was born on November 25, 1954. [Administrative Record ("AR") at 39.] She has a twelfth grade education and past work experience as, among other things, an office clerk, mail sorter, and receptionist. [AR at 12, 58, 63, 78.]

On April 4, 2003, plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments (the latter protectively filed on March 31, 2003), alleging that she had been unable to work since March 31, 1999, due to depression, seizures, nervousness, and hearing voices. [AR at 39-42, 57, 226-29.] After a denial of her applications, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on September 8, 2004, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 238-69.] On March 25, 2005, the ALJ determined that plaintiff was not disabled. [AR at 11-19.][1] When the Appeals Council denied review on June 7, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] The ALJ concluded that plaintiff last met the coverage criteria for disability benefits on September 30, 1994. As she is claiming a disability as of March, 1999, the ALJ concluded that she is not entitled to disability insurance benefits. [AR at 12.] Plaintiff does not challenge this determination.

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

1 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has
2 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
3 and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform
4 past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
5 case of disability is established. The Commissioner then bears the burden of establishing that the
6 claimant is not disabled, because she can perform other substantial gainful work available in the
7 national economy. The determination of this issue comprises the fifth and final step in the
8 sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
9 at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the filing of her application. [AR at 13.] At step two, the ALJ concluded that plaintiff does not have a "severe" impairment. [AR at 18.] Accordingly, the ALJ determined that plaintiff was not disabled. [AR at 11-19.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ's non-severity finding is not supported by substantial evidence. Joint Stipulation ("Joint Stip.") at 3. For the reasons discussed below, the Court agrees with plaintiff and reverses the ALJ's decision and remands the case for further proceedings.

Plaintiff contends that the ALJ erred in concluding that her mental impairment is not severe, i.e., that it does not have "more than a minimal [e]ffect on [plaintiff's] ability to perform basic work activities." Joint Stipulation ("Joint Stip.") at 3. Defendant argues that the ALJ's finding that plaintiff's mental impairment is not severe was proper, as the ALJ based his conclusions in part on the consultative examiner and state agency physician. Joint Stip. at 8-12.

A "severe" impairment (or combination of impairments) is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520, 416.920. It

must last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. The Supreme Court has recognized that including a "severity" inquiry at stage two of the evaluation process permits the Commissioner to screen out claimants whose impairments are so slight that they are unlikely to be found disabled even if age, education, and experience are considered. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994), citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). However, overly stringent application of the "severity" requirement would violate the statute by denying benefits to claimants who meet the definition of "disabled." Corrao, 20 F.3d at 949, citing Bowen v. Yuckert, 482 U.S. at 156-58 (O'Connor, J., concurring).

Accordingly, an impairment should be found to be "non-severe" only when the evidence establishes merely a slight abnormality, with no more than a minimal effect on ability to work. Corrao, id., citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)(citing Social Security Ruling 85-28 (1985)). Despite use of the term "severe" here, most Circuits (including the Ninth Circuit) have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996), citing Bowen v. Yuckert, 482 U.S. at 153-54; see also, e.g., Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)(evaluation can stop at step two only when there is no more than minimal effect on ability to work).

Here, plaintiff asserts that the following show her mental impairment to be severe: 1. an initial diagnosis from Portals Community Corrections of major depression with psychotic features, a Global Assessment of Functioning score of 50[2], and the subsequent treatment records [AR at 162-73]; 2. a consultative examination by John Woodard, M.D., from November, 2003, following

---

[2] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. 2000) (hereinafter, "DSM IV"). A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSM-IV, at 34.

which he concluded that plaintiff has a depressive disorder, not otherwise specified, and a schizoid personality disorder, with slight to moderate impairments for interacting with the public, slight impairments for interacting with supervisors and co-workers, for maintaining concentration and attention and for withstanding normal work stressors and pressures, as well as for performing detailed complex tasks, and slight to moderate incapacity for completing a normal work week without interruption [AR at 181-84]; 3. the state agency physician who concluded that plaintiff would be moderately limited in her ability to understand and remember detailed instructions, in her ability to carry out detailed instructions, and in her ability to accept instructions and respond appropriately to criticism from supervisors. [AR at 185-86.] The physician limited plaintiff to simple repetitive tasks in a low stress environment. [AR at 187.]

       The ALJ relied on Dr. Woodard and the state agency psychiatric consultant to conclude that plaintiff does not have a severe mental impairment, as her impairment has "only a slight or slight to moderate impact on her functioning ability," or, as the ALJ reports the state agency psychiatrist concluded, mental impairments that are "mild in severity." [AR at 17.]  However, the ALJ omitted relevant assessments by these mental health professionals.  Dr. Woodard also concluded that plaintiff had a slight to moderate incapacity to complete a normal work week without interruption. The state agency psychiatrist opined that plaintiff is moderately limited in certain areas, including her ability to accept instructions and respond appropriately to criticism from supervisors.  No rationale was provided by the ALJ to reject these limitations.  With them, it appears that plaintiff's impairment could have more than a minimal effect on her ability to work.

       As part of his analysis, the ALJ also completely rejected plaintiff's testimony, finding her not credible.  A further evaluation of plaintiff's credibility is in order, as her credibility is directly tied to the severity of her impairments.  Plaintiff's allegations can be rejected only upon a finding that plaintiff is malingering (no such finding was made here), or by expressing clear and convincing reasons for doing so.  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Some of the reasons provided by the ALJ are suspect, however. The ALJ concluded that plaintiff lied and was inconsistent about her drug use. [AR at 17.]  Plaintiff indicated in September, 2003, that she last used cocaine 7 months earlier.  [AR at 145-46.]  She testified that as of the date of the hearing

(September, 2004) she had been sober for 18 months. [AR at 245-46, 257-58.] These statements are consistent with each other. The ALJ accurately related that plaintiff incorrectly told an evaluator in March, 2001, that she did not use drugs [AR at 17, 89], and denied drug use to Dr. Woodard. [AR at 182.] But the record is ambiguous as to what was asked of her by Dr. Woodard in November, 2003, when she denied illegal drug use. Was Dr. Woodard seeking her current habits, or habits from her past? If current, it appears her response was entirely consistent. [AR at 17, 182.] On the other hand, her response in September 2003, that she last used cocaine nine months prior [AR at 131] is consistent with her statement in March, 2003, that she last used cocaine at the start of 2003. [AR at 170.] Significantly, the ALJ believed in forming his opinion and rejecting plaintiff's credibility that she tested positive for cocaine in May, 2003, during the very time frame when she contends she had stopped using. ("**Notably**, May 2003 treatment records indicate positive urine testing results for cocaine." (emphasis added)). [AR at 15.] The document the ALJ refers to in support, however, is a May 14, 2003, "pre op work up," which includes a screening for cocaine. [AR at 102.] The results of that test for cocaine were **negative**. [AR at 106.]

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient). If properly supported, an ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986). Here, the reasons given by the ALJ for rejecting plaintiff's complaints at this stage of the sequential analysis "were not substantial enough to meet the 'clear and convincing' standard when balanced against [plaintiff's] doctors' contemporaneous observations, some objective tests and [plaintiff's] subjective complaints." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). As the ALJ misconstrued the evidence in a manner that may well have tainted his view of plaintiff's credibility, and as he rejected certain limitations imposed by physicians without explanation, when he accepted other findings of those same physicians, remand is warranted.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to reassess plaintiff's impairment at step two in the sequential evaluative process, and to reevaluate plaintiff's credibility based on a complete and accurate assessment of the evidence of drug use.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: July ___, 2007

                                            PAUL L. ABRAMS
                                 UNITED STATES MAGISTRATE JUDGE